**Redacted**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UTICA MUTUAL INSURANCE COMPANY,                             :
                                                            :
                              Plaintiff,                    :
                                                            :
               - against -                                  :   No.: 11-cv-8207 (AKH)
                                                            :
INA REINSURANCE COMPANY,                                    :
N/K/A R&Q REINSURANCE COMPANY,                              :
                                                            :
                              Defendant.                    :
------------------------------------------------------------X

## PLAINTIFF UTICA MUTUAL INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................................1

I.   ARGUMENT ......................................................................................................................2

   A.   Utica Is Likely To Succeed On The Merits. .........................................................3

   B.   Alternatively, Utica Has Established Serious Questions And A
        Balance of Hardships Weighing In Its Favor. ........................................................6

   C.   Without An Injunction, Utica Will Suffer Irreparable Harm. ................................8

   D.   The Court Should Not Delay Its Decision On Utica's Motion. ...........................12

CONCLUSION ............................................................................................................................13

\* \* \*

Declaration of Syed S. Ahmad Submitted With Reply for Utica's Motion for Preliminary Injunction

| Exhibit No. | Description |
|---|---|
| 6 | December 5, 2008 Letter from John Finnegan to Bernard Turi |
| 7 | December 19, 2008 Letter from Walter Andrews to John Finnegan |
| 8 | January 14, 2009 Letter from John Finnegan to Walter Andrews |
| 9 | ███████████████████████████████████ |
| 10 | ███████████████████████████ |
| 11 | ███████████████████████████████ |
| 12 | ███████████████████████████████████ |
| 13 | ███████████████████████████████████ |

| | |
|---|---|
| 14 | ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ |
| 15 | Order Allowing Limited Disclosure of Certain Filings Under Seal, filed in the Northern District of New York on December 21, 2011 |

# INTRODUCTION

This case arises out of Chadbourne & Parke LLP using confidential information the firm obtained on behalf of one client for the benefit of another, unrelated firm client. Chadbourne's repeated disclosure of confidential information violated an Arbitration Panel's Confidentiality Order and confidentiality agreements in an effort to improperly harm Utica Mutual Insurance Company. As shown below, the firm's misconduct has continued, requiring a preliminary injunction to avoid further irreparable harm.

Certain attorneys at Chadbourne represent R&Q Reinsurance Company. ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ At the time, Utica and R&Q were in arbitration about a dispute related to certain reinsurance agreements, and Utica and R&Q had agreed that everything concerning the arbitration was confidential. In fact, Chadbourne prepared the agreement containing the confidentiality provision. Pursuant to the confidentiality agreement, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

Unknown to Utica at the time, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, R&Q's counsel at the firm discussed ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ with other attorneys at the firm who represented a completely unrelated firm client, Fireman's Fund Insurance Company ("FFIC"). Utica and FFIC were in litigation concerning other, unrelated reinsurance agreements covering ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬. As described by R&Q's counsel, ▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████████████████ Then, disregarding the confidentiality agreement between Utica and R&Q, and attempting to benefit another firm client, R&Q's counsel discussed with FFIC's attorneys ████████████████████ ████████████████████████████████████████ ███████████████████████████ In doing so, R&Q and Chadbourne disregarded their confidentiality obligations.

Unable to deny that the information obtained for R&Q was disclosed to FFIC, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████

The Court should enjoin R&Q and Chadbourne from committing additional violations.

## I.   ARGUMENT

The Court should grant Utica's Motion for Preliminary Injunction for three reasons: (1) R&Q has violated its confidentiality obligations; (2) R&Q continues to flout those obligations; and (3) without a preliminary injunction, Utica will suffer irreparable harm.

First, although R&Q agreed that the arbitration between Utica and R&Q was "private and confidential, and nothing concerning the proceeding shall be disclosed" (Doc. No. 9-1 § C),

---

[1] Utica submitted Exhibits 1 through 5 with its opening brief. Utica is providing Exhibits 6 through 15 with this reply. Also, in the action between Utica and FFIC in the NDNY, Magistrate Judge Lowe entered an Order on December 21, 2011 allowing certain filings that were submitted under seal in that action to be disclosed to this Court. Ex. 15. Those filings – which detail the improper disclosures (at least the ones Utica is aware of) – are attached as Exhibits 12-14.

2

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████

Second, R&Q continues to flout its obligations to maintain the confidentiality of the information about the arbitration. ████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████completely undermining R&Q's assurances that it will abide by its confidentiality obligations.

Third, given the prior and ongoing violations of the confidentiality obligations, the Court should enjoin R&Q from disclosing any additional confidential information to prevent irreparable harm to Utica from additional disclosures. *See* Doc. No. 9-2 § 6 (parties' Confidentiality Agreement stating that parties "recognize that serious injury could result to any party and its business if the other party breaches its obligations").

### A. Utica Is Likely To Succeed On The Merits.

███████████████████████████████████████
████████████ So R&Q resorts to arguing that Utica cannot establish a likelihood of

3

success on the merits ███████████████████████████

████████████████████████████████████████████████

██████████████████████ R&Q is wrong because:

██ Utica and R&Q had decided that company employees (not outside counsel) would communicate on routine business issues and that the communications concerning the arbitration would be handled by Utica's outside counsel in the arbitration and R&Q's outside counsel in the arbitration. Exs. 6-8. ████████████████

███████████████████████████████

██████████████████████████

████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████

It was only after Utica learned about R&Q's improper disclosures ██████

████████████████████████████████████

████████████████████████████████████

---

2 ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

4

R&Q's new position is baseless and falls well short of the showing necessary to avoid a preliminary injunction.[3] *See Eng* v. *Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (to show a likelihood of success on the merits, the moving party "need only make a showing that the probability of [its] prevailing is better than fifty percent" and there "may remain considerable room for doubt" and there is no need to demonstrate "that success is an absolute certainty").

[REDACTED]

In sum, while the Arbitration Protocol governed the parties' confidentiality obligations in September 2009, [REDACTED]

That disclosure violated the Arbitration Protocol, which provided that "nothing concerning the

---

[3] [REDACTED] R&Q and Utica had entered into a confidentiality agreement in October 2008 (before arbitration had commenced) to maintain the confidentiality of information Utica would provide to R&Q in response to its inquiries. Doc. 1-1. [REDACTED]

(continued . . .)

proceeding" could be disclosed. Doc. No. 9-1 § C. Then, after the Confidentiality Order and the parties' Confidentiality Agreement became effective in October 2009, R&Q's counsel again disclosed information about ███████████████████████████ and again for the benefit of another firm client (FFIC ███████████████████████)

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████

Accordingly, Utica's probability of success on the merits is much greater than fifty percent. Therefore, Utica has demonstrated a likelihood of success on the merits. *See Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*, 282 F. App'x 885 (2d Cir. 2008) (finding likelihood of success on merits in breach of contract claim based on violation of confidentiality provisions).

**B. Alternatively, Utica Has Established Serious Questions And A Balance of Hardships Weighing In Its Favor.**

In addition, Utica has, at the very least, established the alternate showing available to secure preliminary relief – serious questions going to the merits of this matter and a balance of hardships weighing in favor of Utica. *See Citi Group Global Markets, Inc. v VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (explaining that court may grant preliminary injunction where there are "sufficiently serious questions going to the merits to make

███████████████████████████████████████████
█████████████████████.

them a fair ground for litigation" and "where the costs outweigh the benefits of not granting the injunction"). The section above demonstrated, at least, serious questions going to the merits of this matter – for example, whether Chadbourne should be permitted to continue disclosing confidential information obtained for one client for the benefit of another client. And, as shown below, the balance of hardships weighs heavily in favor of Utica.

R&Q does not suffer hardship in abiding by agreed-upon confidentiality obligations. *See Ayco Co., L.P. v. Frisch*, -- F. Supp. 2d --, No. 1:11-cv-580, 2011 WL 2413516, at *15 (N.D.N.Y. June 10, 2011) (finding balance of hardships weighed in favor of injunction where plaintiff was threatened with disclosure of confidential information and injunction would only obligate defendant to do what it agreed to do); *Garcia v. Lee*, No. 10-cv-1618, 2010 WL 2102903, at *3-4 (E.D.N.Y. May 26, 2010) (finding balance of hardships tipping in favor of plaintiff where injunction "would not prevent or discourage the defendants from engaging in lawful activity"). R&Q does not contest any of Utica's case law cited in Utica's opening brief to show that the hardships weigh heavily in Utica's favor.

Ignoring the case law, R&Q contends that an injunction will have a "chilling effect" on it. But, a ruling holding R&Q to the confidentiality obligations it voluntarily agreed to does not harm R&Q. *See R Squared Global, Inc. v. Serendipity 3, Inc.*, No. 11-cv-7155, 2011 WL 5244691, at *8 (S.D.N.Y. Nov. 3, 2011) ("The balance of equities tips decidedly in favor of requiring that the parties continue fulfilling their obligations under the Agreement."); *cf. Kopple v. Stonebrook Fund Mgmt., LLC*, 875 N.Y.S.2d 821 (N.Y. Sup. Ct. July 12, 2004) (finding that enforcement of confidentiality clause in arbitration agreement would not cause irreparable harm). In fact, to the extent that R&Q's behavior would be "chilled" so it stops violating its

7

confidentiality obligations, that is the precise purpose of the injunction Utica seeks, not a reason to deny Utica's motion for the injunction.

In sum, there are, at the very least, serious questions going to the merits of this matter. And, R&Q suffers no hardship by abiding by the very confidentiality obligations that it agreed to abide by. Accordingly, and independent of Utica's showing of the likelihood of success on the merits, Utica has at least established serious questions going to the merits and that the balance of hardships weighs heavily in favor of Utica.

### C. Without An Injunction, Utica Will Suffer Irreparable Harm.

In its opposition, R&Q does not dispute that it has already acknowledged that a violation of the parties' Confidentiality Agreement and the Panel's Confidentiality Order could cause "serious injury" to Utica and that Utica would be entitled to seek an injunction if R&Q violated the agreement. Doc. Nos. 9-2 § 6, 9-3 § 6. And, R&Q does not dispute that this recognition also weighs heavily in favor of a finding of irreparable harm. *See N. Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (finding that defendant's acknowledgement in agreement that violation of confidentiality clause would cause irreparable injury to plaintiff weighed in favor of irreparable injury finding); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (same).

Additionally, R&Q does not address more than a dozen decisions cited in Utica's opening brief that find that the disclosure of confidential information constituted irreparable harm. Doc. No. 10 at 8-10. These decisions are uniformly in favor of finding irreparable harm here. *See, e.g., Blyer ex rel. N.L.R.B. v. One Stop Kosher Supermarket*, Inc., 720 F. Supp. 2d 221, 227 (E.D.N.Y. 2010) (recognizing that "the loss of confidentiality would constitute some irreparable harm"); *Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*, 282 F. App'x 885 (2d Cir. 2008) (affirming finding of irreparable harm if defendant was not enjoined from obtaining confidential

information); *Minnesota Mining & Mfg. v. Francavilla*, 191 F. Supp. 2d 270, 278 (D. Conn. 2002) ("Loss of confidential and proprietary information is not measurable in money damages." (citation omitted)).

Instead, throughout its opposition, R&Q argues that Utica will suffer no harm because R&Q claims it will abide by its confidentiality obligations. But, R&Q misinterprets its obligations and has made clear that it will continue to do so. For example, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Under R&Q's interpretation, additional disclosures about ▮▮▮▮▮ ▮▮▮▮▮ would not even violate the obligations it claims it will abide by ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ And, without an injunction to stop R&Q from its continued violations, Utica suffers irreparable harm. *See X Corp. v. Doe*, 805 F. Supp. 1298 (E.D. Va. 1992) (finding irreparable harm due to disclosure of confidential information even though defendant claimed that information he disclosed was not confidential and that he therefore was not violating and would not violate his confidentiality obligations).

R&Q's next argument is that *U.S. Re Cos. v. Scheerer*, 41 A.D.3d 152 (N.Y. App. Div. 2007), supports denying Utica's Motion. But that decision does not apply here. Unlike the plaintiff in that case, Utica has shown that R&Q violated its confidentiality obligations. Moreover, Utica does not merely speculate that R&Q will continue to disclose confidential information.

Indeed, R&Q continued to disclose confidential information – ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

R&Q's prior and continuing disclosures of confidential information in violation of its confidentiality obligations and its unwavering adherence to its erroneous interpretation of those obligations means that continuing and future violations are likely. *See Alcaterl Space, S.A. v. Loral Space & Commc'ns Ltd.*, 154 F. Supp. 2d 570, 585 (S.D.N.Y. 2001) (finding that irreparable harm was "imminent and real" where defendants had already disclosed confidential information); *Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491, 1495 (D. Kan. 1995) (finding "real and substantial threat" of improper disclosure of confidential information where defendant already admitted to disclosing such information); *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (finding that plaintiff would "suffer irreparable harm because there is no cure for the breach of the confidentiality agreement" (quotation omitted)).

R&Q's attempts to distinguish *Alcaterl Space*, *Heatron*, and *Arce* fail. R&Q claims that the *Alcaterl Space* decision rested on the circumstance that the defendants would need to disclose confidential information. That is not true. The court in that case found irreparable harm based on the defendants' *past actions*, explaining that defendants' prior actions in negotiating with and disclosing confidential information and defendants' refusal to provide another party with certain information demonstrated "that irreparable harm *is* imminent and real." *Alcaterl Space*, 154 F. Supp. 2d at 584-85. Similarly, in this case, R&Q's past improper disclosures as well as its alleged commitment to an incorrect interpretation of its confidentiality obligations show that irreparable harm is imminent and real.

The Court should also find irreparable harm under *Heatron*. R&Q says that the decision is inapplicable because in that case, the defendant did not deny he had disclosed confidential information.[4] 898 F. Supp. at 1502. But this is no different than the case here. R&Q has admitted ███████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████ So, like the court in *Heatron*, this Court should find irreparable harm based on R&Q's past and continuing improper disclosures and erroneous view of its confidentiality obligations. 898 F. Supp. at 1502 (finding irreparable harm where defendant admitted "he has already discussed" confidential information).

Finally, R&Q's effort to distinguish *ITT Educational Services, Inc. v. Arce*, 533 F.3d 342 (5th Cir. 2008), fails. Contrary to R&Q's claim, Utica does not argue that *Arce* creates a *per se* rule, but rather relies on that case for the persuasive force of the Fifth Circuit's reasoning under very similar circumstances. Doc. No. 10 at 11-12. R&Q attempts to distinguish this case on the grounds that the defendant in *Arce* informed the plaintiff that defendant planned to disclose confidential information. But, again, the situation here is the same. ████████████
████████████████████████████████████████████████████████
████████████████████████████████████

---

[4] R&Q also argues that, *Heatron*, the defendant did not deny that he planned to make additional disclosures. That is the same as the situation here. R&Q has not denied that it plans to continue making disclosures ████████████████████████████████████████ in violation of its confidentiality obligations. In fact, R&Q has continued making the disclosures.

11

In sum, Utica has established irreparable harm. *See IDG USA, LLC v. Schupp,* 416 F. App'x 86 (2d Cir. Mar. 25, 2011) (explaining that to demonstrate irreparable harm, the party should show that "an injury is likely absent the injunction and that the injury cannot be adequately remedied with money damages" (citing *Grand River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007)). ████████████████████████████████████████ Because Utica has also established a likelihood of success on the merits, or, alternatively, serious questions going to the merits and a balance of hardships in favor of Utica, the Court should grant Utica's Motion for Preliminary Injunction.

### D. The Court Should Not Delay Its Decision On Utica's Motion.

The Court should not stay its decision on Utica's Motion for Preliminary Injunction for any reason. R&Q suggests that the Court stay its decision on Utica's Motion for Preliminary Injunction until resolution of R&Q's Motion to Dismiss in this Court or until resolution of Utica's Motion to Strike in the NDNY Action. But, R&Q provides no reasoning for its position. And, in fact, there is none. Utica shows below why R&Q's argument fails.

#### 1. R&Q's Motion To Dismiss Is Not Jurisdictional.

First, although it admits that abstention under the *Colorado River* doctrine is discretionary, R&Q proceeds to incorrectly characterize its Motion to Dismiss as one challenging this Court's subject-matter jurisdiction. The *Colorado River* abstention doctrine has nothing to do with federal court subject-matter jurisdiction. Indeed, application of the doctrine assumes that the federal court has subject-matter jurisdiction. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983) (abstaining under *Colorado River* means court is surrendering jurisdiction that it unquestionably has). Thus, R&Q has not challenged this Court's subject-matter jurisdiction. Moreover, the NDNY Court's recent Order allowing Utica to

provide this Court with the sealed filings containing R&Q's improper disclosures further shows that R&Q's Motion to Dismiss is meritless because this is the only case involving R&Q, and only this Court can award relief against R&Q.

### 2. This Court Should Not Wait For The NDNY Court's Decision On Utica's Motion To Strike.

Second, there is no reason for the Court to stay its decision on Utica's Motion for Preliminary Injunction until the NDNY Court makes a decision on Utica's Motion to Strike. As will be more thoroughly explained in Utica's Opposition to R&Q's Motion to Dismiss, the issues in the NDNY Action are not the issues in this action. Importantly, Utica does not seek (and could not seek) a preliminary injunction enjoining R&Q and its agents in the NDNY Action because R&Q is not a party to that action. Utica properly seeks that relief here, in the *only* lawsuit against R&Q. And, recognizing that only this Court can grant relief against R&Q, the NDNY Court granted Utica's request to provide the sealed filings to this Court so that Utica may fully pursue its claims against R&Q in this Court. *See* Ex. 15. Accordingly, there is no reason to delay ruling on Utica's Motion for Preliminary Injunction.

### CONCLUSION

For the reasons above and in Utica's opening memorandum, this Court should grant Utica's Motion for Preliminary Injunction.

Dated: New York, New York  
December 23, 2011

HUNTON & WILLIAMS LLP

By: /s/ Robert J. Morrow  
Robert J. Morrow  
HUNTON & WILLIAMS LLP  
200 Park Avenue  
New York, New York 10166  
(212) 309-1000  
rmorrow@hunton.com

13

Walter J. Andrews (to be admitted *pro hac vice*)
Syed S. Ahmad (to be admitted *pro hac vice*)
Patrick M. McDermott (to be admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
(703) 714-7400
wandrews@hunton.com
sahmad@hunton.com
mcdermottp@hunton.com

*Counsel for Utica Mutual Insurance Company*

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

I am the Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Plaintiff Utica Mutual Insurance Company.

That on December 23, 2011, I served a true copy of the foregoing, on counsel of record for Defendant, at the address listed below, via First-Class Mail, by depositing the same in a duly-enclosed and sealed wrapper, with the correct postage thereon, in an official letter box duly maintained by the Government of the United States of America, within the State of New York

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 23, 2011.

/s/ Bradford C. Mulder
Bradford C. Mulder

TO: John F. Finnegan, Esq.
Michael Samalin, Esq.
Robert A. Schwinger, Esq.
Thomas J. Hall, Esq.
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112-0127

*Attorneys for Defendant
INA Reinsurance Company n/k/a R&Q Reinsurance Company*